UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X

CECIL HOLLINS and SANDE FRENCH,

                        Plaintiffs,                <u>MEMORANDUM & ORDER</u>

            - against -
                                                   05-CV-4085 (JG)(MDG)
THE UNITED STATES TENNIS ASSOCIATION,
<u>et</u> <u>al.</u>,

                        Defendants.
- - - - - - - - - - - - - - - - - - -X

DUDLEY GAYLE,

                        Plaintiff,

            - against -                            05-CV-4277 (JG)(MDG)

THE UNITED STATES TENNIS ASSOCIATION,
<u>et</u> <u>al.</u>,


                        Defendants.
- - - - - - - - - - - - - - - - - - -X

GO, United States Magistrate Judge:

     Defendants The International Tennis Federation (the "ITF")

and Michael Morrissey ("Morrissey") (collectively "the moving

defendants") move to stay written discovery against them and for

a protective order preventing the taking of depositions pending

resolution of their motions to dismiss the complaints.


                        <u>BACKGROUND</u>

     Plaintiffs Cecil Hollins and Sande French bring this action

against the United States Tennis Association (the "USTA"),

Richard Kaufman, the ITF and Morrissey for race discrimination,

and with respect to French, sex discrimination, in employment in

violation of Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. §§ 2000e et seq., 42 U.S.C. § 1981, the New
York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 et
seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C.
Admin. Code § 8-101 et seq. (the "Hollins action").  Plaintiff
Dudley Gayle brings age and race discrimination claims under the
above statutes and the Age Discrimination in Employment Act
("ADEA"), 29 U.S.C. § 621 et seq., against the same defendants,
except Morrissey (the "Gayle action").

        Plaintiffs are tennis umpires alleging that they were denied
opportunities to officiate significant tennis matches on the
basis of race, gender or age and were retaliated against for
their complaints of discrimination.  Much of the discriminatory
conduct alleged in the complaints occurred at the National Tennis
Center in New York, the site of the annual US Open.  The ITF is
the worldwide governing body for tennis and Morrissey is ITF's
Administrator of Officiating.  The USTA is the governing body for
tennis in the United States and Kaufman is its Director of
Officials.

        At an initial conference held on February 21, 2006, the
undersigned consolidated the Gayle and Hollins actions for
discovery purposes and ordered expedited discovery regarding
personal jurisdiction and any other defenses ITF raised in its
pre-motion letter.  See minute entry dated February 21, 2006.
The order specifically provided that the actions were not stayed
pending resolution of the moving defendants' anticipated motion
to dismiss and directed the parties to "attempt to complete all
document discovery before conducting depositions."  Id.

        Plaintiffs served defendants with a document request dated

March 15, 2006, containing 134 separate requests, many of which concerned the merits of the cases.  <u>See</u> Affidavit of Holly Weiss dated April 28, 2006 ("Weiss Aff.") (ct. doc. 15),[1] Exh. 10.  On April 4, 2006, plaintiffs served a deposition notice for two witnesses, ITF's Executive Director and a person associated with the USTA, purportedly for jurisdictional discovery.  <u>See</u> <u>id.</u>, Exh. 11.  On April 12, 2006, plaintiffs served another deposition notice seeking ten additional depositions, which plaintiffs' counsel concedes is for merits discovery.  <u>See</u> <u>id.</u>, Exh. 12.  The moving defendants seek a protective order staying any further written discovery as to them, relieving them of their obligation to respond to outstanding discovery requests and preventing any depositions until their motions to dismiss are decided.  Plaintiffs do not object to a stay of merits discovery regarding the moving defendants but do object to staying depositions regarding defendants USTA and Kaufman.  In addition, plaintiffs still seek discovery regarding personal jurisdiction over the moving defendants.

<u>DISCUSSION</u>

<u>Jurisdictional Discovery</u>

The instant discovery motion arises from the moving defendants' motions to dismiss for, <u>inter</u> <u>alia</u>, lack of personal jurisdiction.  On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), "the plaintiff bears the burden of showing that the court has jurisdiction over

---

[1] All references to electronically filed documents are denoted by "ct. doc." followed by the document number and refer to the docket in the Hollins action.

-3-

the defendant." <u>Kernan v. Kurz-Hastings, Inc.</u>, 175 F.3d 236, 240 (2d Cir. 1999); <u>Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 566 (2d Cir. 1996).  Prior to engaging in discovery, plaintiff need only assert "facts constituting a prima facie showing of personal jurisdiction" to defeat a motion to dismiss.  <u>PDK Labs Inc. v. Friedlander</u>, 103 F.3d 1105, 1108 (2d Cir. 1997).  "Plaintiffs may rely entirely on allegations of fact, and they will prevail even if the moving party makes contrary allegations which controvert their prima facie case." <u>Sodepac, S.A. v. Choyang Park In Rem</u>, No. 02 Civ. 3927, 2002 WL 31296341, at *2 (S.D.N.Y. Oct. 10, 2002); <u>see Credit Lyonnais Sec. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 153 (2d Cir. 1999).

"District courts are afforded considerable procedural leeway in deciding" a motion to dismiss for lack of personal jurisdiction.  <u>See Credit Lyonnais</u>, 183 F.3d at 153.  In determining whether jurisdiction over the defendant has been established, the Court may consider matters outside the pleadings without converting the motion to dismiss into a motion for summary judgment.[2]  <u>See Whitaker v. Am. Telecasting, Inc.</u>, 261

_____

[2] The moving defendants argue that the plaintiffs' affidavits and other evidence submitted should not be considered in support of their request for jurisdictional discovery.  <u>See</u> Defs.' Br. (ct. doc. 14) at 5; Defs.' Reply Br. (ct. doc. 27) at 4-5.  However, since the instant motion requires the court to consider issues relating to personal jurisdiction, the Court is not confined to the allegations in the complaint and may consider affidavits and documentary evidence.  <u>See In re Magnetic Audiotape Antitrust Litig.</u>, 334 F.3d 204, 208 (2d Cir. 2003) (reversing district court's denial of jurisdictional discovery based on documents submitted in opposition to dismissal); <u>Ayyash v. Bank Al-Madina</u>, No. 04 Civ. 9201, 2006 WL 587342, at *5-*6 (S.D.N.Y. March 9, 2006) (considering "allegations and evidence produced at this stage" in ordering jurisdictional discovery); <u>Uebler v. Boss Media</u>, 363 F. Supp. 2d 499, 506 (E.D.N.Y. 2005)
(continued...)

F.3d 196, 208 (2d Cir. 2001); <u>Bensusan Restaurant Corp. v. King</u>,
937 F. Supp. 295, 298 (S.D.N.Y. 1996), <u>aff'd</u>, 126 F.3d 25 (2d
Cir. 1997).  Because this Court has not held a hearing or trial
on the merits, "all pleadings and affidavits must be construed in
the light most favorable to [plaintiff] and all doubts must be
resolved in . . . plaintiff's favor."  <u>Landoil Res. Corp. v.
Alexander & Alexander Servs., Inc.</u>, 918 F.2d 1039, 1043 (2d Cir.
1990).

In a federal question case, where a defendant resides
outside the forum state, a federal court applies the forum
state's personal jurisdiction rules unless the applicable federal
statute specifically provides for national service of process.
<u>PDK Labs</u>, 103 F.3d at 1108.  Since plaintiffs allege federal
question subject matter jurisdiction over defendants, <u>see</u> Hollins
Compl. (attached to Weiss Aff. as Exh. 1) at ¶ 11; Gayle Compl.
(attached to Weiss Aff. as Exh. 2) at ¶ 11, New York's
jurisdiction rules apply.

The moving defendants contend that plaintiffs must make a
prima facie showing of jurisdiction to obtain jurisdictional
discovery, relying on <u>Jazini v. Nissan Motor Co.</u>, 148 F.3d 181,
185 (2d Cir. 1998).  Defs.' Reply Br. at 2 & n.2.  However,
Second Circuit authority is more limited than defendants suggest.
<u>See</u> <u>Ayyash</u>, 2006 WL 587342, at *5 n.7 (discussing <u>Jazini</u>).
Accordingly, district courts in this Circuit have ordered
jurisdictional discovery where plaintiff made less than a prima

---

[2](...continued)
(ordering jurisdictional discovery "[b]ased on the documents
before the Court").

facie showing but "made a sufficient start toward establishing personal jurisdiction." Uebler v. Boss Media, 363 F. Supp. 2d 499, 506-07 (E.D.N.Y. 2005); see Ayyash, 2006 WL 587342, at *5 (ordering discovery upon a "threshold showing that there is some basis for the assertion of jurisdiction[,] facts that would support a colorable claim of jurisdiction"); Allojet PLC v. Vantgage Assocs., No. 04 Civ. 5223, 2005 WL 612848, at *7 (S.D.N.Y. March 15, 2005); Newbro v. Freed, No. 03 Civ. 10308, 2004 WL 691392, at *3 (S.D.N.Y. March 31, 2004); PST Servs., Inc. v. Larson, 221 F.R.D. 33, 37 (N.D.N.Y. 2004); Winston & Strawn v. Dong Won Secs. Co. Ltd., 02 Civ. 0183, 2002 WL 31444625, at *5 (S.D.N.Y. Nov. 1, 2002) (denying motion to dismiss and permitting discovery "where the facts necessary to establish personal jurisdiction . . . lie exclusively within the defendant's knowledge"); Aerotel, Ltd. v. Sprint Corp., 100 F. Supp. 2d 189, 194 (S.D.N.Y. 2000) (denying motion to dismiss to permit plaintiff to take jurisdictional discovery despite plaintiff's "conclusory" allegations).

Jazini involved a request for "extensive discovery" based only on "conclusory non-fact-specific jurisdictional allegations." 148 F.3d at 185. There, the Court held merely that plaintiff's "sparse" allegations of the foreign parent's domination of its New York subsidiary did not warrant "rather extensive" jurisdictional discovery. Id. Jazini did not categorically deny jurisdictional discovery in the absence of a prima facie showing. See Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft, 31 F.App'x 738, 739 (2d Cir. 2002) (distinguishing Jazini); Ayyash, 2006 WL 587342, at *5 n.7.

In fact, the Second Circuit has ordered jurisdictional discovery where plaintiffs allege more than conclusory statements but without supporting facts. In Texas Int'l, plaintiff asserted jurisdiction over a German corporation based on the activities of its American subsidiaries. The Court held that plaintiffs were "entitled to jurisdictional discovery in order to develop the factual record requisite for such a showing." 31 F.App'x at 739. The Court distinguished Jazini in that "plaintiffs' jurisdictional allegations are neither sparse nor insufficiently specific; they are simply insufficiently developed at this time to permit judgment as to whether personal jurisdiction is appropriate."

Similarly, in the companion case to Texas Int'l, In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204 (2d Cir. 2003), plaintiff alleged that a Korean corporation exerted such control over its United States subsidiary that the subsidiary's connections to the United States should be imputed to its foreign parent for jurisdictional purposes. The Court reasoned that since the analysis involved a "multi-factor test that is very fact-specific," discovery was necessary to develop plaintiffs' allegations of jurisdiction prior to a finding that plaintiffs failed to make a prima facie showing. 334 F.3d at 208. The Court reversed the district court's dismissal as "premature . . . prior to allowing discovery on plaintiff's insufficiently developed allegations regarding the relationship between [the foreign parent] and its subsidiary." Id.; see also APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003) ("court should take care to give the plaintiff ample opportunity to secure and present

evidence relevant to the existence of jurisdiction"); <u>Koehler v.</u>
<u>Bank of Bermuda</u>, 101 F.3d 863, 866 (2d Cir. 1996) (since personal
jurisdiction "turns on a thorough examination of the facts
defining the relationship between the two corporations, we are
reluctant to rely on what may turn out to be an incomplete
record").

Thus, the Second Circuit distinguishes between allegations
that are "insufficiently developed" warranting discovery and
those that are "sparse" and "conclusory" requiring dismissal.  As
discussed below, although plaintiffs' allegations may be
"insufficiently developed" to resolve the issue of personal
jurisdiction, plaintiffs have made a "sufficient start toward
establishing personal jurisdiction" to obtain jurisdictional
discovery.

<u>Defendant ITF</u>

Plaintiffs seek limited jurisdictional discovery to oppose
ITF's motions to dismiss.  Specifically, plaintiffs request
information concerning contracts between ITF and entities in New
York State, whether ITF supplied staff to the USTA for the US
Open, income derived by the ITF from the US Open, umpire training
in New York, licensing agreements concerning the ITF and New York
State, television revenue generated from New York State and other
income or contacts with New York State.

Plaintiffs allege personal jurisdiction over the ITF
primarily under N.Y. CPLR § 302(a)(1).  Nevertheless, plaintiffs
have made a sufficient showing of general jurisdiction under N.Y.
CPLR § 301 to warrant discovery on the issue.  Section 301

requires that the defendant is "engaged in such a continuous and systematic course of 'doing business' . . . as to warrant a finding of its 'presence' in this jurisdiction." <u>Koehler</u>, 101 F.3d at 865.  General jurisdiction over a defendant exists if the defendant "is present in the state not occasionally or casually, but with a fair measure of permanence and continuity." <u>Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.</u>, 77 N.Y.2d 28, 33-34, 563 N.Y.S.2d 739 (1990).  The test is a "simple and pragmatic one, which varies in its application depending on the facts and circumstances of each case." <u>Id.</u> at 33.  As the Second Circuit has noted, "[t]here is no talismanic significance to any one contact or set of contacts that a defendant may have with a forum state; courts should assess the defendant's contacts as a whole." <u>Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 570 (2d Cir. 1996).

Plaintiffs have made the following allegations as to jurisdiction over the ITF supported by affidavits and documentary evidence.  The ITF is the governing body of tennis worldwide and is responsible for promulgating and administering the rules of tennis, hiring and promoting professional umpires and sanctioning tennis matches held throughout the world, including the US Open, an "official Championship[] of the ITF."  Declaration of Cecil Hollins dated May 19, 2006 ("5/19/06 Hollins Decl.") at ¶ 2; Declaration of Gary Ireland dated May 19, 2006 ("Ireland Decl."), Exhs. A at ITF000459-61, B, C and D; Declaration of Sande French in Opposition to Motion to Dismiss dated June 11, 2006 ("French Decl.") (ct. doc. 50) at ¶ 7.  According to its records, the ITF

"sanctions and works closely with the four Grand Slam" events,[3] including the US Open, and supports the US Open with "administrative, officiating and media services." Ireland Decl., Exh. A at ITF000460-62; Declaration of Cecil Hollins in Opposition to Motion to Dismiss dated June 2006 ("6/06 Hollins Decl.") (ct. doc. 52) at ¶¶ 2, 7, 11-15, 20, 23; French Decl. at ¶¶ 52-55. The ITF controls many aspects of the US Open, including the selection of chair and line umpires, the clothing of umpires, drug testing of players, the scheduling of matches, and some licensing. 6/06 Hollins Decl. at ¶¶ 2-3, 22; Ireland Decl., Exhs. A, B, C; Declaration of Dudley Gayle in Opposition to Motion to Dismiss dated June 12, 2006 ("Gayle Decl.") (ct. doc. 51) at ¶ 15; French Decl. at ¶¶ 9, 54. The ITF derives a substantial portion of its revenues in connection with the US Open. 6/06 Hollins Decl. at ¶ 26; French Decl. at ¶ 7. During the US Open, the ITF maintains offices at the National Tennis Center in New York, where it has its own telephone line. 6/06 Hollins Decl. at ¶¶ 24-25; Gayle Decl. at ¶ 14; French Decl. at ¶ 15. Plaintiffs had frequent personal contact with ITF personnel and ITF management at the National Tennis Center during the US Open. Gayle Decl. at ¶ 13; French Decl. at ¶¶ 52-53, 55; 6/06 Hollins Decl. at ¶¶ 20-21. For example, the ITF holds annual refresher schools for tennis officials at the National Tennis Center during the US Open. Gayle Decl. at ¶ 11; French Decl. at ¶ 17; 6/06 Hollins Decl. at ¶ 17. In addition to the US Open, the ITF annually holds tennis tournaments in New York, including

---

[3] The four Grand Slam events are "[t]he most prestigious competitions in tennis." Ireland Decl., Exh. A at ITF000460.

the ITF Challenger in Forest Hills, the ITF-GHI Challenger in the
Bronx, the ITF Challenger in Binghampton and the ITF Futures in
Buffalo.  Gayle Decl. at ¶ 10; French Decl. at ¶ 16; 6/06 Hollins
Decl. at ¶ 19; Ireland Decl., Exh. D.

In response, the ITF submits the affidavits of John Garnham,
ITF's Executive Director of Finance and Administration, to
contest plaintiffs' allegations.  See Affidavit of John Garnham
dated April 26, 2006 (attached to Weiss Aff. as Exh. 4); Reply
Declaration of John Garnham dated June 29, 2006 ("6/29/06 Garnham
Decl.") (ct. doc. 55).  However, "conflicts between the facts
contained in the parties' affidavits must be resolved in
plaintiffs' favor."  In re Ski Train Fire in Kaprum, Austria on
Nov. 11, 2000, 257 F. Supp. 2d 717, 729 (S.D.N.Y. 2003) (quoting
AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir.
1996)); see A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-
80 (2d Cir. 1993) (when considering affidavits and sworn
declarations, "doubts are resolved in plaintiff's favor,
notwithstanding a contravening presentation by the moving
party"); Uebler, 363 F. Supp. 2d at 503.  Although a plaintiff's
"unsupported allegations" may be rebutted by "direct, highly
specific, testimonial evidence," Schenker v. Assicurazaioni
Generali, S.p.A., Consol., No. 98 Civ. 9186, 2002 WL 1560788, at
*2 (S.D.N.Y. July 15, 2002), here, plaintiffs' allegations are
specifically supported by affidavits and documentary evidence.

In fact, rather than conclusively refuting plaintiffs'
allegations, many of Garnham's assertions merely raise more
questions regarding the significance of ITF's activities in New
York.  For example, Garnham contends that the "ITF has never had

-11-

a permanent or temporary office at the National Tennis Center."
6/29/06 Garnham Decl. at ¶ 23. However, Garnham concedes that
ITF employees attend the US Open, provide services at the US Open
and use office space at the National Tennis Center with a
dedicated telephone line. See id. at ¶¶ 20-22. Garnham further
states that the USTA owns and organizes the US Open, see id. at ¶
15, but ITF materials provide that the ITF "sanctions" the US
Open and refer to the US Open as an "Official Championship[] of
the ITF." Ireland Decl., Exh. A at ITF000462. Moreover,
although Garnham attempts to rebut plaintiffs' allegations
regarding the ITF's connection to tennis tournaments held in
Buffalo and the Bronx, see 6/29/06 Garnham Decl. at ¶ 28-29, the
documents attached to his affidavit demonstrate that those
tournaments are included in the ITF Men's and Women's Circuit
Tournament Calendars and expressly require that entries and
withdrawals from those tournaments be submitted to the ITF rather
than the USTA. See id., Exh. B.

Since the ITF's business is sanctioning and regulating
tennis tournaments and tennis officials, plaintiffs' allegations
concerning the ITF's activities with respect to tournaments held
in New York are a "sufficient start" towards establishing that
the ITF is "doing business" here to warrant jurisdictional
discovery. See Mantello v. Hall, 947 F. Supp. 92, 98 (S.D.N.Y.
1996) ("[A] defendant who lacks the traditional indicia of doing
business nevertheless does business in New York when it engages
in its principal corporate activity within New York on a
systematic and continual basis"); Erving v. The Virginia Squires
Basketball Club, 349 F. Supp. 709, 713-15 (E.D.N.Y. 1972) (since

basketball team's business was to play games against other teams, games held in New York were "doing business"); Laufer v. Ostrow, 55 N.Y.2d 305, 311, 449 N.Y.S.2d 456, 459 (1982) (defendant was doing business in New York since it engaged directly in its corporate activity with respect to New York accounts"). Although the tennis tournaments held in New York occur only annually, these tournaments have been held on a regular basis for years establishing the permanence and continuity of ITF's activities here. See Erving, 349 F. Supp. at 713-15 (regular and continuous, albeit periodic, visits to New York to play basketball games qualify for "doing business" in New York); Chamberlain v. Peak, 176 A.D.2d 1109, 1110, 575 N.Y.S.2d 410, 411 (3d Dep't 1991) (visits to New York "not pursuant to any routine or schedule" did not amount to a continuous and systematic course of conduct required by section 301).

Furthermore, the ITF's International Player Identification Number system ("IPIN"), which allows players in New York to manage their own tournament schedule via the internet, supports the contention that ITF is doing business here. See Ireland Decl., Exh. B at ITF000507, ITF000527. In determining whether a defendant's activity on a website confers jurisdiction in New York, courts examine the nature and quality of the activity. See Alpha Int'l, Inc. v. T-Reprods., Inc., No. 02 Civ. 9586, 2003 WL 21511957, at *3 (S.D.N.Y. July 1, 2003). At one end of the spectrum are "passive" websites that display but do not permit an exchange of information. Allojet, 2005 WL 612848, at *4. "At the other end of the spectrum are cases in which the defendant clearly does business over the Internet . . . . Occupying the

middle ground are 'interactive' web sites, which permit the
exchange of information between the defendant and web site
viewers." Hsin Ten Enter. USA, Inc. v. Clark Enters., 138 F.
Supp. 2d 449, 456 (S.D.N.Y. 2000). Although a defendant's use of
an interactive website, standing alone, generally will not confer
general jurisdiction over a defendant, the website may support
the proposition that the defendant is doing business in the
state. See Allojet, 2005 WL 612848, at *5-*6 (defendant's
interactive website activity in addition to other activities in
New York could provide basis for general jurisdiction under
section 301); Shottenstein v. Shottenstein, No. 04 Civ. 5851,
2004 WL 2534155, at *11 (S.D.N.Y. Nov. 8, 2004) (denying motion
to dismiss based on interactive website advertising plus
substantial sales to New York residents); Pieczenik v. Cambridge
Auth. Tech. Group, No. 03 Civ. 6336, 2004 WL 527045, at *1 n.9
(S.D.N.Y. 2004) (noting that allegation of highly interactive
website accessible to New York residents would provide basis for
jurisdiction); Thomas Pub. Co. v. Industrial Quick Search, Inc.,
237 F. Supp. 2d 489, 491 (S.D.N.Y. 2002) (plaintiffs adequately
alleged jurisdiction under section 301 based on allegation that
defendant regularly solicited business in New York through its
interactive website); Brown v. Grand Hotel Eden, 214 F. Supp. 2d
335, 339 (S.D.N.Y. 2002) (hotel website that permitted
reservations to be confirmed automatically supported finding that
hotel was doing business in New York). Here, ITF's IPIN system
is at least "interactive" because it permits the "exchange of
information between the defendant and web site viewers." Hsin
Ten, 138 F. Supp. 2d at 456. Given that ITF's business is

managing and regulating its tournaments, the fact that players in New York can manage their own tournament schedules, enter or withdraw from tournaments and pay fines via ITF's IPIN system could support a finding that ITF is doing business in New York.

Other athletic governing associations have been found to be present in a jurisdiction where they sanction athletic events. In M'Baye v. World Boxing Ass'n, No. 05 Civ. 9581, 2006 WL 1120597, at *5 (S.D.N.Y. Apr. 28, 2006), the court exercised jurisdiction over one of the major sanctioning organizations in professional boxing. There, although the World Boxing Association ("WBA") did not maintain an office in New York, the court concluded that it was present in New York based largely on the fact that the WBA had been regularly sanctioning fights held in New York for years. In Nehemiah v. Athletics Congress of U.S.A., 765 F.2d 42, 48 (3d Cir. 1985), the court ordered discovery to establish jurisdiction in New Jersey over the international governing body for amateur athletes which regulated individual eligibility and the conduct of particular athletic events. There, the court ordered discovery concerning the number of United States athletes affected by the organization's regulations, rulings and decisions, and the number of United States events it sanctions, directs and controls. Finally, in Behagen v. Amateur Basketball Ass'n of the U.S.A., 744 F.2d 731, 734 (10th Cir. 1984), the court found that the international association regulating amateur basketball was present in Colorado because it acted through its American member organization there

in regulating amateur basketball in the United States.[4]

Even if plaintiffs do not satisfy the requisite showing under section 301 because ITF's business activity is deemed insufficiently continuous and systematic, plaintiffs' allegations and the evidence submitted in support are sufficient to entitle plaintiffs to jurisdictional discovery under section 302(a)(1). Section 302(a)(1) provides that a court may exercise jurisdiction over a foreign defendant who "transacts any business within the state" provided that the claim arises from the transaction of such business. Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004); N.Y. C.P.L.R. § 302(a)(1). A foreign defendant "transacts business" "when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 166 (2d Cir. 2005) (quoting CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)). "The showing necessary for a finding that a

---

[4] Although not raised by plaintiffs, see Pl.'s Opp. Br. (ct. doc. 26) at 9-10, jurisdiction over the ITF may similarly be appropriate under section 301 based on the actions taken on its behalf by the USTA, an ITF member and arguably its United States agent, which has conceded that it is organized under New York law and is headquartered in New York. See Answer (ct. doc. 3) at 1. Jurisdiction may be predicated on the local activities of a foreign entity's agent if they are "sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000). The ITF describes its role as "administering and regulat[ing]" tennis "through 203 National Associations affiliated to the ITF," one of which is the USTA. Ireland Decl., Exh. A at ITF000460. Moreover, plaintiffs have already demonstrated some overlap in directors between the USTA and the ITF, one factor courts consider in determining whether a foreign entity is a mere department of a New York corporation. See Porter v. LSB Industries, Inc., 192 A.D.2d 205, 214-15, 600 N.Y.S.2d 867 (4th Dep't 1993).

defendant 'transacted business' within the meaning of section 302(a)(1) is considerably less onerous than that required for a finding that a defendant was doing business under section 301." ESI, Inc. v. Coastal Corp., 61 F. Supp. 2d 35, 57 (S.D.N.Y. 1999); Gleason Works v. Klingelnberg Oerlikon Geartec Vertriebs-GMBH, 58 F. Supp. 2d 47, 50 (W.D.N.Y. 1999).  Unlike section 301, section 302(a)(1) may be satisfied by an isolated but purposeful transaction in New York.  Grand River, 425 F.3d at 166.  The cause of action "arises from" the transaction of business where there is a "substantial nexus" between the business and the cause of action.  See id.

    Plaintiffs have made at least a threshold showing that the ITF "transacts business" in New York based on the allegations discussed above.  Clearly, by holding and regulating tennis tournaments in New York, including the employment of tennis umpires, ITF has purposefully availed itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.  See Reynolds v. Int'l Amateur Athletic Federation, 841 F. Supp. 1444, 1451 (S.D. Ohio 1992) (international athletic association "transacts business in Ohio" based on the fact that it made eligibility determinations on Ohio athletes and entered into contracts with those athletes); In re Estate of Vanderbilt, 109 Misc.2d 914, 924, 441 N.Y.S.2d 153 (Sur. Ct. 1981) (American Association of Museums was subject to personal jurisdiction under section 302 as it purported to exercise a power of accreditation and evaluation over museums in the state of New York).

    Moreover, there is a "substantial nexus" between plaintiffs'

claims of discrimination and the business ITF transacts in New
York. Central to plaintiffs' claims are the alleged acts of
discrimination pertaining to plaintiffs' participation in the US
Open. Specifically, plaintiffs claim they were denied the
opportunity to officiate at the more significant matches at the
US Open. Plaintiffs also cite several examples of discriminatory
comments and conduct that occurred at the US Open. In addition,
French and Gayle claim they were retaliated against for filing
complaints of discrimination with the ITF in New York, including
one complaint each filed with Morrissey personally while he was
in New York.

In sum, plaintiffs have "made a sufficient start toward
establishing personal jurisdiction" over ITF under either section
301 or 302(a)(1) to warrant jurisdictional discovery.

Michael Morrissey

Plaintiffs in the Hollins action also seek jurisdictional
discovery to oppose Morrissey's motion to dismiss. For example,
the Hollins plaintiffs seek discovery concerning Morrissey's
travels to New York for the US Open. For the reasons set forth
below, the Hollins plaintiffs have made a "sufficient start"
towards establishing personal jurisdiction over Morrissey to
obtain jurisdictional discovery.

Plaintiffs allege that Morrissey is subject to jurisdiction
in New York under CPLR § 302(a)(3)(i) and (ii). Under section
302(a)(3), plaintiff must allege that the defendant committed a
tortious act outside New York causing injury within New York and
that the defendant (i) "regularly does or solicits business, or

-18-

engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered" in New York; or (ii) "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." CPLR § 302(a)(3). It is undisputed that Morrissey's alleged discriminatory acts constitute torts within the meaning of section 302(a). <u>See</u> <u>Launer v. Buena Vista Winery, Inc.</u>, 916 F. Supp. 204, 210 (E.D.N.Y. 1996).

To determine whether injury was caused in New York, courts examine whether New York was the location of the "original event which caused the injury." <u>DiStefano v. Carozzi N. America, Inc.</u>, 286 F.3d 81, 84 (2d Cir. 2001). The "original event" occurs where the first effect of the tort is experienced by the plaintiff. <u>See</u> <u>id.</u> at 84-85. For example, in <u>DiStefano</u>, the Second Circuit held that the plaintiff, who performed a substantial part of his employment duties in New York, "experienced the first effect of losing his job in New York, even though he was fired in New Jersey." <u>See</u> <u>id.</u>

Unlike a car accident which occurs at one time and in one place, here, plaintiffs' allegations concern conduct that occurred over a period of time and included actions taken both within and without the state. <u>See</u> <u>Launer</u>, 916 F. Supp. at 211. If Morrissey's alleged torts occurred in New York, then jurisdiction would be proper under section 302(a)(2) without consideration of where the injury occurred.[5] <u>See</u> N.Y. CPLR §

_____

[5] Plaintiffs argue that "[a]t this early stage and without
(continued...)

302(a)(2) ("tortious act within the state").  However, even if
Morrissey's alleged tortious acts were committed outside New
York, under section 302(a)(3), plaintiffs have made a sufficient
showing that the first effect of Morrissey's alleged
discriminatory behavior was experienced by plaintiffs in New
York.  Many of the instances of discriminatory conduct alleged by
plaintiffs concern plaintiffs' alleged exclusion from officiating
significant matches at the US Open.  See DiStefano, 286 F.3d at
85; Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990) (in
employment discrimination action, injury occurred where
employment was located).  Moreover, French describes
conversations she had with Morrissey at the National Tennis
Center in New York which she alleges were "harass[ing] and
retaliatory" and caused her to be "extremely humiliat[ed]."
French Decl. at ¶¶ 43, 46-50.  Thus, plaintiffs have adequately
alleged that Morrissey caused a tort injury in New York.

Plaintiffs have also made a sufficient showing to satisfy
section 302(a)(3)(i)'s requirement that the defendant "regularly
does . . . business, or engages in any other persistent course of
conduct" in New York.  The amount of business that must be
conducted to satisfy this standard "is less than that which is
required to satisfy the conventional doing business standard."
Vincent C. Alexander, Practice Commentaries, N.Y. CPLR § 302 at
159 (McKinney 2001).  French states that she observed Morrissey

───────────────────────────

[5](...continued)
any meaningful discovery, Plaintiffs cannot be expected to know
whether the ITF Defendants' discriminatory and retaliatory
conduct occurred in New York or elsewhere.  In any event, it had
its effects in New York City and New York state."  Pl.'s Opp. Br.
at 12.

-20-

in New York on ITF and USTA business every year for at least the past ten years and Mr. Hollins observed Morrissey in New York for business purposes every year from 1991-2003. French Decl. at ¶ 55; 6/06 Hollins Decl. at ¶ 23. French further states that she had frequent personal contacts with Morrissey in New York City during her employment, including filing a discrimination complaint with him in 2002. French Decl. at ¶¶ 13, 20. Similarly, Hollins had frequent contacts with Morrissey in New York City during his employment, including several meetings and conversations in 2003. 6/06 Hollins Decl. at ¶¶ 38, 43, 46, 47, 48, 52. At this juncture, the Hollins plaintiffs have made a sufficient showing of Morrissey's regular visits to New York to conduct business and his personal involvement in the claims at issue to satisfy section 302(a)(3)'s requirement that the defendant "regularly . . . does business" in the state. See Minibooster Hydraulics A/S v. Scanwill Fluid Power ApS, 315 F. Supp. 2d 286, 291-92 (W.D.N.Y. 2004) (personal jurisdiction over principal of Danish company who traveled to New York to conduct business under "transacts business" standard of section 302(a)(1)); see also Retail Software Services, Inc. v. Lashlee, 854 F.2d 18, 22 (2d Cir. 1988) (individual defendant must be "primary actor" in New York transaction rather than "some corporate employee . . . who played no part in it" under section 302(a)).

Although plaintiffs do not allege jurisdiction under section 302(a)(2), as noted above, the allegations concerning Morrissey appear to concern conduct that occurred while Morrissey was present in New York. See Family Internet, Inc. v. Cybernex,

-21-

<u>Inc.</u>, No. 98 Civ. 0637, 1999 WL 796177, at *7 (S.D.N.Y. Oct. 6, 1999) (section 302(a)(2) "reaches tortious acts performed by a defendant who was physically present in New York when committing those acts").  Thus, even if plaintiffs have not made a sufficient showing under section 302(a)(3), they have adequately alleged that Morrissey, a non-domiciliary, committed tortious acts within New York.

Although I find that plaintiffs have alleged sufficient facts to warrant jurisdictional discovery, whether that discovery should include the two depositions noticed by plaintiffs will be discussed at a conference to be held on July 25, 2006 at 12:00 p.m.

<u>Stay of Depositions</u>

The moving defendants seek a stay of depositions concerning the merits of plaintiffs' claims against defendants USTA and Kaufman pending their motions to dismiss.

Under Fed. R. Civ. P. 26(c), a district court may stay discovery during the pendency of a motion to dismiss for "good cause" shown.  <u>See</u> <u>In re Currency Conversion Fee Antitrust Litig.</u>, No. MDL 1409, M21-95, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002); <u>United States v. County of Nassau</u>, 188 F.R.D. 187, 188 (E.D.N.Y. 1999); <u>Moore v. Painwebber, Inc.</u>, No. 96 Civ. 6820, 1997 WL 12805, at *1 (S.D.N.Y. Jan. 14, 1997).  The mere filing of a motion to dismiss does not constitute "good cause" for the issuance of a stay.  <u>See</u> <u>In re Currency Conversion</u>, 2002 WL 88278, at *1; <u>County of Nassau</u>, 188 F.R.D. at 188.  Courts consider the following factors in determining whether a stay is

appropriate: 1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; 2) the breadth of discovery and the burden of responding to it; and 3) the risk of unfair prejudice to the party opposing the stay.  See Telesca v. Long Island Housing Partnership, Inc., No. CV 05-5509, 2006 WL 1120636, at *1 (E.D.N.Y. Apr. 27, 2006); In re Currency Conversion, 2002 WL 88278, at *1.  Courts also may take into consideration the nature and complexity of the action, whether some or all of the defendants have joined in the request for a stay, and the posture or stage of the litigation.  See Telesca, 2006 WL 1120636, at *1; Hachette Distribution, Inc. v. Hudson County News Co., Inc., 136 F.R.D. 356, 358 (E.D.N.Y. 1991).

The moving defendants have made a colorable showing raising doubts as to the viability of plaintiffs' complaints.  ITF argues that the discrimination statutes alleged to be violated do not apply to it because it was not an "employer" under those statutes.  The moving defendants further argue that the complaints' conclusory allegations fail to state a claim. Morrissey contends that he cannot be held individually liable for the claims alleged against him.  These arguments raised by the moving defendants for dismissal of many, if not all, of the claims asserted against them are not frivolous.

As to the discovery sought, only two of the witnesses noticed for depositions have ever been affiliated with ITF, Morrissey and a former ITF employee.  Since only Morrissey is under ITF's control, the burden on ITF in making one witness available for deposition is not onerous.  Moreover, the moving defendants' argument that they would be prejudiced by having to

-23-

participate in the depositions of non-ITF witnesses does not constitute "good cause." See Howard v. Galesi, 107 F.R.D. 348, 350 (S.D.N.Y. 1985). On the other hand, plaintiffs claim that they will be prejudiced if they are unable to depose some of the out of state witnesses during August and September while they are in New York City for the US Open. Pl.'s Opp. Br. at 2 n.1. Thus, the interests of justice militate in favor of denying the stay. Cf. Rodriguez v. Biltoria Realty LLC, 203 F. Supp. 2d 290, 292 (E.D.N.Y. 2002) (interests of justice precluded adjourning deposition of party who was foreign citizen of limited means and would be leaving country upon expiration of her visa within few weeks).

Importantly, only two of the four defendants in the Hollins action and one of the three defendants in the Gayle action have filed dispositive motions. Although defendants USTA and Kaufman join in the moving defendants' request for a stay of depositions, those defendants do not claim any prejudice in the absence of a stay. See Letter to Court from Darrell Gay dated April 28, 2006 (ct. doc. 9). Thus, even if the moving defendants' motions to dismiss are granted, this action will proceed and discovery will be conducted. Given the allegations in the complaints, the moving defendants are important witnesses in this case. Even assuming the moving defendants' are dismissed, it is likely that the plaintiffs will continue to conduct discovery regarding these defendants as non-parties. Although the moving defendants correctly note that non-party discovery involves different mechanisms to ensure compliance, the absence of a stay would not create an undue burden on the moving defendants. Discovery of

the moving defendants is inevitable regardless of the outcome of their motion to dismiss.  See Hachette Distribution, Inc. v. Hudson County News Co., Inc., 136 F.R.D. 356, 358-59 (E.D.N.Y. 1991).

Considering the totality of the circumstances, a stay of the depositions noticed would unduly impede the progress of this lawsuit.  Thus, the moving defendants' application for a stay is denied.

<u>CONCLUSION</u>

For the foregoing reasons, the moving defendants' request for a protective order and limited stay of discovery is denied. The scope of jurisdictional discovery will be discussed at a conference to be held on July 25, 2006 at 12:00 p.m.

**SO ORDERED.**

Dated:     Brooklyn, New York
           July 10, 2006

                               /s/
                               _____
                               MARILYN D. GO
                               UNITED STATES MAGISTRATE JUDGE